FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
AUG 0 8 2022
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | UNDER SEAL |
| | ) | NO. 3:22-00266 |
| v. | ) | |
| | ) | 18 U.S.C. § 371 |
| [1] JEFRY SALGADO-VELASQUEZ | ) | 18 U.S.C. § 922(a)(1)(A) |
| a/k/a "SHARKY" | ) | 18 U.S.C. § 922(a)(3) |
| | ) | 18 U.S.C. § 922(a)(4) |
| [2] ALONSO GONZALEZ-GABRIEL | ) | 18 U.S.C. § 922(l) |
| | ) | 18 U.S.C. § 922(o) |
| [3] MICHAEL PEREZ-RODRIGUEZ | ) | 18 U.S.C. § 923(a) |
| | ) | 18 U.S.C. § 924 |
| [4] DENNIS FERRER-GONZALEZ | ) | 18 U.S.C. § 1956(h) |
| | ) | 26 U.S.C. § 5812 |
| [5] DAVID LIMONES-ALMONTE | ) | 26 U.S.C. § 5841 |
| | ) | 26 U.S.C. § 5861 |
| [6] ROBILIO CRUZ | ) | 26 U.S.C. § 5871 |

# INDICTMENT

## COUNT ONE

(Conspiracy to Commit Offenses Against the United States—18 U.S.C. § 371)

THE GRAND JURY CHARGES:

PURPOSE OF THE CONSPIRACY

1. Beginning not later than in or about December 2020, the exact date being unknown to the Grand Jury, and continuing through to the present, in the Middle District of Tennessee and elsewhere, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [5] DAVID LIMONES-ALMONTE,** and **[6] ROBILIO CRUZ** did knowingly

combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    A.    To knowingly engage in the business of dealing in firearms without a license and in the course of such business, to ship and transport any firearm in interstate commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A);

    B.    To willfully transport firearms into another state or receive firearms that the defendant knows were purchased or otherwise obtained outside that state, in violation of Title 18, United States Code, Section 922(a)(3);

    C.    To knowingly transport or receive in interstate or foreign commerce, without a license to deal, import, or manufacture firearms, a machine gun as defined by Title 26, United States Code, Section 5845(b) without the specific authorization of the Attorney General, in violation of Title 18, United States Code, Section 922(a)(4);

    D.    To knowingly and without authorization from the Attorney General import or willfully receive a firearm imported into the United States, in violation of Title 18, United States Code, Section 922(l);

    E.    To knowingly possess or transfer a machine gun, in violation of Title 18, United States Code, Section 922(o);

    F.    To knowingly engage in the business of manufacturing, importing, and dealing in firearms without having paid the special occupational tax required by 26 U.S.C. Section 5801 and without having registered as required by 26 U.S.C. § 5802, in violation of Title 26, United States Code, Sections 5861(a) and 5871;

    G.    To knowingly receive and possess a firearm, namely Glock switches which constitute machineguns under 26 U.S.C. § 5845, made in violation of chapter 53 of Title 26, in violation of Title 26, United States Code, Sections 5822, 5861(c), and 5871.

H.  To knowingly receive and possess a firearm, namely Glock switches which constitute machineguns under 26 U.S.C. § 5845, not registered in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871;

I.  To knowingly and unlawfully transfer firearms, namely Glock switches which constitute machineguns under 26 U.S.C. § 5845, to individuals within the Middle District of Tennessee in violation of Title 26, United States Code, Sections 5812, 5841, 5861(e), and 5871;

J.  To knowingly transport, deliver, and receive firearms from Mexico to the Middle District of Tennessee in interstate and foreign commerce, namely Glock switches which constitute machineguns under 26 U.S.C. § 5845, not registered as required by chapter 53 of Title 26, in violation of Title 26, United States Code, Sections 5841, 5861(j), and 5871; and

K.  To knowingly receive and possess a firearm, namely Glock switches which constitute machineguns under 26 U.S.C. § 5845, unlawfully imported and brought into the United States, in violation of Title 26, United States Code, Sections 5844, 5861(k), and 5871.

MANNER AND MEANS

2.  It was part of the conspiracy that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ [6] ROBILIO CRUZ**, and other individuals known and unknown to the Grand Jury, would purchase Glock switches, which meet the definition of a machine gun under Title 26, United States Code, Section 5845(b), from **[5] DAVID LIMONES-ALMONTE**, who was operating a business known as Foxtrot Tactical Shop

3

in the country of Mexico, which sold Glock switches and drop in auto sears, both of which constitute machine guns under federal law.

3. It was further part of the conspiracy that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ [6] ROBILIO CRUZ**, and other individuals known and unknown to the Grand Jury, would send funds to **[5] DAVID LIMONES-ALMONTE** using MoneyGram International, Inc. ("MoneyGram") facilities within the Middle District of Tennessee. MoneyGram is an American cross-border P2P payments and money transfer company based in the United States with headquarters in Dallas, Texas.

4. It was further part of the conspiracy that in order to avoid detection, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ** and **[6] ROBILIO CRUZ** would direct the shipments of machine guns from **[5] DAVID LIMONES-ALMONTE** to be sent to various addresses under false or fictitious names.

5. It was further part of the conspiracy that **[5] DAVID LIMONES-ALMONTE** would ship to **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [6] ROBILIO CRUZ** and other individuals known and unknown to the Grand Jury, machine guns they purchased from his business, Foxtrot Tactical Shop, to the middle District of Tennessee using DHL, a logistics company that provides courier, package delivery, and express mail service.

6. It was further part of the conspiracy that that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [6] ROBILIO CRUZ** and other

4

individuals known and unknown to the Grand Jury, would then sell the machine guns they purchased from **[5] DAVID LIMONES-ALMONTE** to other individuals within the middle District of Tennessee.

## OVERT ACTS

7. In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Tennessee and elsewhere, at least one of the following overt acts, among others:

    A. On or about December 1, 2020, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $950 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    B. On or about December 1, 2020, **[2] ALONSO GONZALEZ-GABRIEL** sent $600 and $950 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    C. On or about December 1, 2020, **[4] DENNIS FERRER-GONZALEZ** sent $1,500 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    D. On or about December 30, 2020, **[4] DENNIS FERRER-GONZALEZ** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    E. On or about January 4, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $670 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    F. On or about January 20, 2021, A.B., an unindicted co-conspirator, sold a Glock switch for $1,200 to a confidential informant;

    G. On or about March 6, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $800 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

    H. On or about March 11, 2021, A.B., an unindicted co-conspirator, told a confidential informant that the Glock switches had arrived in the Middle District of Tennessee;

I. On or about March 12, 2021, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"** aided and abetted by **[6] ROBILIO CRUZ** and unindicted co-conspirators sold or conspired to sell five (5) Glock switches to a confidential informant for $5,000;

J. On or about April 7, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $2,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

K. On or about April 7, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $400 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

L. On or about April 20, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent two separate transactions of $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

M. On or about April 28, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $1,080 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

N. On or about May 17, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $400 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

O. On or about May 17, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $2,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

P. On or about May 18, 2021, **[5] DAVID LIMONES-ALMONTE** received MoneyGram transactions from **[2] ALONSO GONZALEZ-GABRIEL** and **[4] DENNIS FERRER-GONZALEZ**;

Q. On or about May 20, 2021, **[5] DAVID LIMONES-ALMONTE** shipped via DHL a package containing "other articles of aluminum parts" to a residence associated with **[2] ALONSO GONZALEZ-GABRIEL**;

R. On or about May 24, 2021, **[2] ALONSO GONZALEZ-GABRIEL**

6

received a package from DHL delivery drivers at the residence that **[5] DAVID LIMONES-ALMONTE** shipped a package to on May 20, 2021;

S. On or about May 25, 2021, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"** aided and abetted by indicted and unindicted co-conspirators others sold or conspired to sell six (6) Glock switches to a confidential informant for $4,200;

T. On or about May 31, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $2,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

U. On or about May 31, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $800 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

V. On or about May 31, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $2,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

W. On or about June 4, 2021, DHL delivered a shipment of "other articles of aluminum" shipped by **[5] DAVID LIMONES-ALMONTE** to a residence in the Middle District of Tennessee associated with **[2] ALONSO GONZALEZ-GABRIEL** and camera footage shows **[2] ALONSO GONZALEZ-GABRIEL** retrieving the package;

X. On or about June 3, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

Y. On or about June 8, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

Z. On or about June 9, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

AA. On or about June 9, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $1,800 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

BB. On or about June 17, 2021, a DHL shipment receipt was generated for a

package of "other articles of aluminum" shipped by **[5] DAVID LIMONES-ALMONTE** to a residence in the Middle District of Tennessee associated with members of the conspiracy;

CC. On or about June 18, 2021, a DHL shipment arrival alert was generated for the package of "other articles of aluminum" shipped by **[5] DAVID LIMONES-ALMONTE** the previous day to a residence in the Middle District of Tennessee associated with members of the conspiracy;

DD. On July 13, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $1,650 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

EE. On or about July 14, 2021, a DHL shipment receipt was generated for a package of "Other – other articles of aluminum" shipped by **[5] DAVID LIMONES-ALMONTE** to a residence in the Middle District of Tennessee associated with **[2] ALONSO GONZALEZ-GABRIEL**;

FF. On or about July 19, 2021, DHL delivered a shipment of "Other – other articles of aluminum" shipped by **[5] DAVID LIMONES-ALMONTE** to a residence in the Middle District of Tennessee associated with **[2] ALONSO GONZALEZ-GABRIEL** who was observed taking possession of the package;

GG. On or about October 16, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

HH. On or about October 21, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

II. On or about October 23, 2021, **[2] ALONSO GONZALEZ-GABRIEL** sent $1,300 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

JJ. On or about October 18, 2021, **[5] DAVID LIMONES-ALMONTE**

8

received MoneyGram funds from **[3] MICHAEL PEREZ-RODRIGUEZ**;

KK. On or about October 25, 2021, **[5] DAVID LIMONES-ALMONTE** received MoneyGram funds from **[2] ALONSO GONZALEZ-GABRIEL** and **[4] DENNIS FERRER-GONZALEZ**;

LL. On or about October 26, 2021, **[5] DAVID LIMONES-ALMONTE** shipped a package via DHL to an address associated with members of the conspiracy and the recipient's phone number matched **[4] DENNIS FERRER-GONZALEZ's** phone number;

MM. On or about October 28, 2021, a shipment from **[5] DAVID LIMONES-ALMONTE** was delivered by DHL to a Nashville address that is associated with **[4] DENNIS FERRER-GONZALEZ** and the recipient's phone number matched **[4] DENNIS FERRER-GONZALEZ's** phone number;

NN. On or about November 6, 2021, a picture posted on Foxtrot Tactical Shop's Facebook page contained a DHL shipment label indicating the package would be delivered from Mexico to Nashville and showed twenty (20) Glock switches and one (1) Swift Link;

OO. On or about November 16, 2021, Foxtrot Tactical Shop accepted a payment of $850 for five (5) Glock switches from an undercover agent working on behalf of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF");

PP. On or about November 17, 2021, Foxtrot Tactical Shop posted a picture to its Facebook page with DHL Shipment label to Houston, Texas, that depicted the five (5) Glock switches ordered by the undercover ATF agent;

QQ. On or about November 18, 2021, **[4] DENNIS FERRER-GONZALEZ** sent $1,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

RR. On or about November 18, 2021, **[3] MICHAEL PEREZ-RODRIGUEZ**

9

sent $1,145 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

SS. On or about November 22, 2021, **[5] DAVID LIMONES-ALMONTE** received MoneyGram funds from **[3] MICHAEL PEREZ-RODRIGUEZ** and **[4] DENNIS FERRER-GONZALEZ**;

TT. On or about November 22, 2021, an online account associated with Foxtrot Tactical Shop generated a picture of thirteen (13) Glock switches and a DHL shipping label to a residence in the Middle District of Tennessee associated with **[2] ALONSO GONZALEZ-GABRIEL**;

UU. On or about November 23, 2021, the ATF undercover agent received the package from Foxtrot Tactical Shop had shipped which contained the five (5) Glock switches described in Paragraph QQ;

VV. On or about November 24, 2021, DHL delivered the package associated with the November 22, 2021 shipping label described in Paragraph UU to a residence in the Middle District of Tennessee associated with **[2] ALONSO GONZALEZ-GABRIEL**;

WW. On or about December 16, 2021, Foxtrot Tactical Shop accepted a payment of $3,300 for twenty (20) Glock switches from an ATF undercover agent;

XX. After receiving the payment from the ATF undercover agent, Foxtrot Tactical Shop sent the ATF undercover agent a picture of the twenty (20) Glock switches on top of a DHL package and shipping label that indicated that the package would ship the following day and arrive on or about December 20, 2021;

YY. On or about December 22, 2021, the ATF undercover agent received the package shipped by Foxtrot Tactical Shop which contained twenty (20) Glock switches;

ZZ. On or about February 2, 2022, **[4] DENNIS FERRER-GONZALEZ** sent $2,000 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

10

AAA. On or about February 3, 2022, **[3] MICHAEL PEREZ-RODRIGUEZ** sent $1,300 to **[5] DAVID LIMONES-ALMONTE** via MoneyGram;

BBB. On or about February 7, 2022, an account associated with Foxtrot Tactical Shop generated a photo of twenty (20) Glock switches alongside a DHL shipping label indicating the package was being sent to a residence associated with **[2] ALONSO GONZALEZ-GABRIEL**;

CCC. On or about February 8, 2022, **[5] DAVID LIMONES-ALMONTE** shipped a package via DHL to an address associated with **[2] ALONSO GONZALEZ-GABRIEL**;

DDD. On or about February 11, 2022, a shipment from **[5] DAVID LIMONES-ALMONTE** was delivered by DHL to a Nashville address that is associated with **[2] ALONSO GONZALEZ-GABRIEL**;

EEE. On or about March 16, 2022, the ATF undercover agent communicated with Foxtrot Tactical Shop, an entity operated by **[5] DAVID LIMONES-ALMONTE**, via a social media platform and Foxtrot Tactical Shop stated that it does not sell any other items other than the "switches" and "yankee boogie" (Swift Links) at this time. During this same conversation, Foxtrot Tactical Shop confirmed that it does not sell tactical equipment, tactical gear, or any other products besides the two products outlined above that are machine guns under federal law;

FFF. On or about March 16, 2022, Foxtrot Tactical Shop accepted a payment of $6,400 for forty (40) Glock switches sent by the ATF undercover agent;

GGG. After receiving the payment from the ATF undercover agent, Foxtrot Tactical Shop, an entity operated by **[5] DAVID LIMONES-ALMONTE**, sent the ATF undercover agent a picture of the forty (40) Glock switches on a DHL shipping label via a

11

social media platform;

HHH. On or about March 23, 2022, the ATF undercover agent received a package from Foxtrot Tactical Shop that contained forty (40) Glock switches;

III. On or about March 21, 2022, Customs and Border Protection officials in Philadelphia seized a package that Foxtrot Tactical Shop had shipped that contained one (1) Glock switch and one (1) Swift Link.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO

(Money Laundering Conspiracy—18 U.S.C. § 1956(h))

THE GRAND JURY FURTHER CHARGES:

PURPOSE OF THE CONSPIRACY

8. The allegations contained in Paragraphs 1 through 7 are realleged and incorporated by reference as if fully set forth herein.

9. Beginning not later than in or about December 2020, the exact date being unknown to the Grand Jury, and continuing through to the present, in the Middle District of Tennessee and elsewhere, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [5] DAVID LIMONES-ALMONTE**, and **[6] ROBILIO CRUZ** did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956 and 1957:

A. To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, any person who, with the intent to engage in the business of

12

Case 3:22-cr-00266   Document 3   Filed 08/08/22   Page 12 of 18 PageID #: 14

dealing in firearms and in the course of such business, to ship, transport, or receive any firearm in interstate or foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A), with the intent to promote the carrying on of specified unlawful activity;

B. To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, any person who, with the intent to engage in the business of dealing in firearms and in the course of such business, to ship, transport, or receive any firearm in interstate or foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A), with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

C. To knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, the proceeds of sales of machineguns, such property having been derived from a specified unlawful activity, that is, any person who, with the intent to engage in the business of dealing in firearms and in the course of such business, to ship, transport, or receive any firearm in interstate or foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A), in violation of Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 18 U.S.C. § 1956(a)(2)(A) and 1957.

## MANNER AND MEANS

10. The manner and means used to accomplish the objectives of the conspiracy included:

A. It was part of the conspiracy that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ** would purchase Glock switches, which meet the definition of a machine gun under Title 26 United States Code § 5845(b), from **[5] DAVID LIMONES-ALMONTE** who was operating a business known as Foxtrot Tactical Shop from the country of Mexico, which sold Glock switches and drop in auto sears, both of which constitute machine guns under federal law.

B. It was further part of the conspiracy that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ** and **[6] ROBILIO CRUZ** would send funds to **[5] DAVID LIMONES-ALMONTE** using MoneyGram International, Inc. ("MoneyGram") facilities within the Middle District of Tennessee. MoneyGram is an American cross-border peer to peer ("P2P") payments and money transfer company based in the United States with its headquarters in Dallas, Texas.

C. It was further part of the conspiracy that, in order to avoid detection, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ** and **[6] ROBILIO CRUZ** would direct the shipments of machine guns from **[5] DAVID LIMONES-ALMONTE** to be sent to various addresses in the Middle District of Tennessee under false or fictitious names.

D. It was further part of the conspiracy that **[5] DAVID LIMONES-ALMONTE** would ship to **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"**,

14

**[2] ALONSO GONZALEZ-GABRIEL**, **[3] MICHAEL PEREZ-RODRIGUEZ**, **[4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ** machine guns they purchased from his business, Foxtrot Tactical Shop, to the Middle District of Tennessee using DHL, a logistics company that provides courier, package delivery, and express mail service.

  E. It was further part of the conspiracy that **[5] DAVID LIMONES-ALMONTE** would ship machine guns purchased by **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"**, **[2] ALONSO GONZALEZ-GABRIEL**, **[3] MICHAEL PEREZ-RODRIGUEZ**, **[4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ** with false descriptions of the items enclosed in the packages in order to conceal the actual contents of the packages he shipped via DHL from Mexico to the Middle District of Tennessee.

  F. It was further part of the conspiracy that that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"**, **[2] ALONSO GONZALEZ-GABRIEL**, **[3] MICHAEL PEREZ-RODRIGUEZ**, **[4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ** would then sell the machine guns they purchased from **[5] DAVID LIMONES-ALMONTE** to other individuals within the middle District of Tennessee.

  G. It was further part of the conspiracy that that **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"**, **[2] ALONSO GONZALEZ-GABRIEL**, **[3] MICHAEL PEREZ-RODRIGUEZ**, **[4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ** would use funds generated from the sale of these machine guns to recruit unindicted co-conspirators to market and sell machine guns purchased from **[5] DAVID LIMONES-ALMONTE** to other individuals within the middle District of Tennessee on their behalf.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE

(Trafficking in Firearms—18 U.S.C. § 922(a)(1)(A))

THE GRAND JURY FURTHER CHARGES:

11. Beginning not later than in or about December 2020, the exact date being unknown to the Grand Jury, and continuing through to the present, in the Middle District of Tennessee and elsewhere, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [5] DAVID LIMONES-ALMONTE**, and **[6] ROBILIO CRUZ**, not being a licensed dealer, importer, or manufacturer of firearms and machineguns within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in and importing firearms and machineguns.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(2).

## COUNT FOUR

(Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside of State of Residency—18 U.S.C. § 922(a)(3))

THE GRAND JURY FURTHER CHARGES:

Beginning not later than in or about December 2020, the exact date being unknown to the Grand Jury, and continuing through to the present, in the Middle District of Tennessee and elsewhere, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ**, and **[6] ROBILIO CRUZ**, not being a licensed importer, manufacturer, dealer, and collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, willfully

did receive in the State of Tennessee, where they then resided, Glock switches which are machineguns under federal law and these machineguns were purchased by these Defendants from a supplier outside the State of Tennessee.

All in violation of Title 18, United States Code, Sections 922(a)(3) and 924(a)(1)(D).

## COUNT FIVE

(Possession of a Machinegun—18 U.S.C. § 922(o))

THE GRAND JURY FURTHER CHARGES:

On or about March 12, 2021, in the Middle District of Tennessee, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"** did knowingly possess and transfer a machinegun, to wit: a Glock switch, which is a combination of parts designed and intended for use in converting a weapon into a machinegun, and is, therefore, a machinegun as defined in 26 U.S.C. § 5845(b).

In violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNT SIX

(Possession of an Unregistered Firearm Governed by the
National Firearms Act—26 U.S.C. § 5861(d))

THE GRAND JURY FURTHER CHARGES:

On or about March 12, 2021, in the Middle District of Tennessee, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY"** knowingly received and possessed a firearm that was not registered to him in the National Firearms Registration and Transfer Record, to wit: a Glock switch, which is a combination of parts designed and intended for use in converting a weapon into a machinegun, and is, therefore, a machinegun as defined in 26 U.S.C. § 5845(b).

In violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

## FORFEITURE ALLEGATION

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of any one of the Counts of the Indictment, **[1] JEFRY SALGADO-VELASQUEZ a/k/a "SHARKY", [2] ALONSO GONZALEZ-GABRIEL, [3] MICHAEL PEREZ-RODRIGUEZ, [4] DENNIS FERRER-GONZALEZ, [5] DAVID LIMONES-ALMONTE**, and **[6] ROBILIO CRUZ** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) by Title 28, United States Code, Section 2461(c), any firearm or ammunition involved in or used in a knowing violation of a Title 18 or Title 26 offense as alleged in this Indictment.

A TRUE BILL

_____
FOREPERSON

MARK H. WILDASIN
UNITED STATES ATTORNEY

*[signature]*
JOSHUA A. KURTZMAN
ASSISTANT UNITED STATES ATTORNEY